*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* KELLY, Minors.

UNPUBLISHED
November 20, 2024
1:50 PM

No. 369568
Wayne Circuit Court
Family Division
LC No. 22-000662-NA

Before: K. F. KELLY, P.J., and CAVANAGH and RIORDAN, JJ.

PER CURIAM.

Respondent-mother appeals by right the trial court's order terminating her parental rights to her minor children, QGK and MCK. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case involves the termination of respondent-mother's parental rights to her two minor children, QGK and MCK.[1] Respondent-mother is also the mother of SCW, who died on February 12, 2022, at the age of seven weeks. SCW's putative father is M. Welch ("Welch"), who is a nonparent adult respondent in this case but not a party to this appeal. At the time this case was initiated, Welch lived with respondent-mother as her unmarried partner.

The record demonstrates that Welch had a history of domestic violence against respondent-mother. In one instance, Children's Protective Services ("CPS") became involved after the minor children witnessed Welch sexually assault respondent-mother. While holding a knife to MCK's throat, Welch also threatened to burn down the home and kill everyone. After this incident, respondent-mother obtained a personal protective order ("PPO") against Welch, but it was never served. In another instance, Welch threw a knife during an altercation with respondent-mother. The knife went through the rear window of

---

[1] MCK's father is also a respondent in this case, however, he is not a party to this appeal. QGK's father is deceased.

the vehicle respondent-mother was driving, causing injuries to QGK's forehead. Respondent-mother tried to escape, but crashed the vehicle into a tree, also causing MCK to hit her head.

The incident leading to the initiation of this case occurred when respondent-mother left QGK, MCK, and SCW in Welch's care while she went to work. Although the details are not known, while in his care, Welch physically assaulted SCW, who was subsequently transported to the hospital where she was discovered to have severe injuries consistent with nonaccidental trauma. SCW died after remaining in a coma for 10 days. The autopsy report determined SCW's cause of death was blunt force trauma to the head, and SCW's manner of death was homicide.

Petitioner Michigan Department of Health and Human Services ("DHHS") petitioned for the termination of respondent-mother's parental rights to the minor children at the initial disposition hearing in the trial court. Respondent-mother pleaded no contest to the facts establishing jurisdiction and statutory grounds for termination under MCL 712A.19b(3)(b)(*ii*) (parent had opportunity to prevent physical injury or abuse and failed to); MCL 712A.19b(3)(b)(*iii*) (nonparent adult's act caused physical injury or abuse); MCL 712A.19b(3)(g) (failure to provide proper care or custody); and MCL 712A.19b(3)(j) (reasonable likelihood of harm if returned to parent).

The trial court ultimately found that there was clear and convincing evidence that statutory grounds for termination existed and that termination of respondent-mother's parental rights was in the minor children's best interests. The trial court opined the children had experienced significant trauma and were terrified. Although the trial court recognized respondent-mother was on a path to recovery, the court found it was not in the minor children's best interests to impose the fear of being with respondent-mother onto them and noted the children were in a home where they could feel safe and secure. This appeal followed.

## II. STANDARDS OF REVIEW

"In order to preserve an argument that petitioner failed to provide adequate services, the respondent must object or indicate that the services provided to them were somehow inadequate." *In re Atchley*, 341 Mich App 332, 336; 990 NW2d 685 (2022). Because respondent-mother did not raise the issue of reasonable efforts in the trial court, the issue is not preserved. Generally, "[w]e review for clear error a trial court's decision regarding reasonable efforts." *In re Sanborn*, 337 Mich App 252, 258; 976 NW2d 44 (2021). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *Atchley*, 341 Mich App at 338 (quotation marks and citation omitted).

> However, unpreserved issues are reviewed for plain error affecting substantial rights. To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings. [*Sanborn*, 337 Mich App at 257 (quotation marks and citations omitted).]

"We review for clear error the trial court's determination regarding the children's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard

to the trial court's special opportunity to observe the witnesses." *In re Jackisch/Stamm-Jackisch, Minors*, 340 Mich App 326, 333; 985 NW2d 912 (2022).

## III. REASONABLE EFFORTS

Respondent-mother argues that termination of her parental rights to her minor children was improper because DHHS did not make reasonable efforts to reunify the family. We disagree.

"Reasonable efforts to reunify the child and family must be made in all cases except those involving aggravated circumstances under MCL 712A.19a(2)." *In re Rippy*, 330 Mich App 350, 355; 948 NW2d 131 (2019). Under MCL 712A.19a(2)(a), "reasonable efforts to reunify the child and family are not required if '[t]here is a judicial determination that the parent has subjected the child to aggravated circumstances as provided in section 18(1) and (2) of the child protection law, 1975 PA 238, MCL 722.638.' " *In re Rippy*, 330 Mich App at 355, quoting MCL 712A.19a(2)(a).

MCL 722.638(1) enumerates the aggravating circumstances applicable:

(a) The department determines that a parent, guardian, or custodian, or a person who is 18 years of age or older and who resides for any length of time in the child's home, has abused the child or a sibling of the child and the abuse included 1 or more of the following:

(*i*) Abandonment of a young child.

(*ii*) Criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate.

(*iii*) Battering, torture, or other serious physical harm.

(*iv*) Loss or serious impairment of an organ or limb.

(*v*) Life threatening injury.

(*vi*) Murder or attempted murder. [MCL 722.638(1).]

Under MCL 722.638(2), DHHS is required to request termination at the initial disposition, "if a parent is a suspected perpetrator or is suspected of placing the child at an unreasonable risk of harm due to the parent's failure to take reasonable steps to intervene to eliminate that risk." MCL 722.638(2).

In this case, DHHS was under no obligation to make reasonable efforts toward reunification. The trial court correctly found there were aggravating circumstances such that reasonable efforts to reunify the family need not be made. Specifically, respondent-mother "subjected the child[ren] to aggravated circumstances" enumerated under MCL 722.638(1), by allowing her children to be in the care of Welch. See MCL 712A.19a(2)(a); MCL 722.638(1).

Under MCL 722.638(1)(a)(*iv*), an aggravating circumstance exists when "a person who is 18 years of age or older and who resides for any length of time in the child's home, has abused the child or a sibling of the child," and the abuse includes "[m]urder or attempted murder." In this case, the record shows that Welch was residing in the home as respondent-mother's live-in partner. On the date of the incident,

respondent-mother left Welch alone with the children while she went to work. Welch physically abused SCW, causing her death. Although the criminal case against Welch is still pending, the trial court found that Welch "killed" SCW.

The trial court determined respondent-mother subjected the children to the aggravating circumstance of MCL 722.638(1)(a)(*vi*), by determining respondent-mother left the minor children in Welch's care, with the full knowledge of his mental instability and history of abuse. Respondent-mother witnessed, and was the victim of, Welch's past abuse. In one instance, Welch sexually assaulted respondent-mother while the minor children were present. Welch also held a knife against MCK's throat and threatened to burn the family's house down and kill them. This incident led respondent-mother to obtain a PPO against Welch, demonstrating that she understood he was a danger to her and her children; however, this PPO was never served. In another instance, Welch threw a knife while in an altercation with respondent-mother, which hit QGK in the forehead, causing injury.

The findings made by the trial court, both during the preliminary hearing and best-interests hearing, indicate respondent-mother had full knowledge of Welch's abusive tendencies. She was aware Welch was a danger to her children. Nevertheless, respondent-mother chose to live with Welch and allowed him to be alone with her children. Thus, the trial court did not plainly err by finding aggravating circumstances were present such that DHHS was not required to make reasonable efforts toward reunification.

## IV. BEST INTERESTS

Respondent-mother also argues the trial court clearly erred by determining that termination of respondent-mother's parental rights was in the minor children's best interests. We disagree.

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013) (footnote omitted). "The trial court should weigh all the evidence available to determine the child[]'s best interests." *In re White*, 303 Mich App at 713 (footnote omitted).

> In making its best-interest determination, the trial court may consider the whole record, including evidence introduced by any party. The child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home, are all factors for the court to consider when deciding whether termination is in the best interests of the child. The trial court may also consider the child's age, inappropriate parenting techniques, and continued involvement in domestic violence. It may further consider visitation history, the parent's engaging in questionable relationships, the parent's compliance with treatment plans, the child's well-being in care, and the possibility of adoption. [*In re Sanborn*, 337 Mich App at 276-277 (quotation marks, citations, and alteration omitted).]

Respondent-mother argues the trial court erred by failing to properly consider the best-interest factors. Respondent-mother suggests the trial court's best-interest determination was erroneous because

-4-

the trial court only considered the trauma the minor children endured and the concern they would be further traumatized if returned to respondent-mother's care. We disagree.

The trial court did acknowledge the trauma the children endured and stated the children were terrified to be around respondent-mother. We have upheld best-interest determinations where the trial court's consideration of the children's trauma and fear of their parent was important. See *In re Schadler*, 315 Mich App 406, 412; 890 NW2d 676 (2016) ("Considering the record as a whole and especially the fact that BS did not want to be alone with respondent, whom he greatly feared to the point that he suffered from PTSD, the trial court did not clearly err by finding that termination of respondent's parental rights was in BS's best interests."). In this case, the children experienced significant trauma while in the care of respondent-mother. The trial court acknowledged that not only did the children witness the death of their younger sibling, they also witnessed Welch commit egregious acts of violence against their mother, including sexual assault. Further, Welch threatened to kill the family and burn down the home, held a knife against MCK's throat, and threw a knife through a car window, hitting QGK. During a forensic interview, QGK also stated Welch hit him with a dog leash and respondent-mother hit him with a collar. The trial court reasoned the minor children were terrified to be around their mother. They experienced increased negative behavioral traits after speaking about or having contact with respondent-mother, including increased aggressive and sexual behaviors. QGK expressed he did not wish to see respondent-mother.

The trauma experienced by the children and the children's fear of their mother is not the only factor considered by the trial court, however. The trial court did consider and acknowledge the progress respondent-mother made in therapy and through other programs. However, the trial court determined respondent-mother's recovery and growth did not outweigh the other factors. The trial court also highlighted that the minor children were in a home where they experienced stability and security, and we have found termination is in children's best interests where "[t]he children had been placed in a stable home where they were thriving and progressing and that could provide them continued stability and permanency." *In re VanDalen*, 293 Mich App 120, 141; 809 NW2d 412 (2011). Since this case began, QGK only had contact once with respondent-mother, and MCK had no contact with her. The children were placed with relatives, where they were provided a stable, secure environment. The trial court did not clearly err by finding the children's stability and risk of further terror and trauma outweighed the positive growth made by respondent-mother and that termination was in their best interests.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Mark J. Cavanagh
/s/ Michael J. Riordan